

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

July 8, 1992

Honorable Rene Guerra
Criminal District Attorney
Hidalgo County Courthouse
Edinburg, Texas 78539

Opinion No. DM-138

Re: Whether the Edinburg Hospital Authority may pay physicians a flat fee or per diem to be on call to admit emergency room patients to the hospital without violating section 161.091 of the Health and Safety Code, which prohibits remuneration for securing or soliciting patients (RQ-301)

Dear Mr. Guerra:

You ask whether the Edinburg Hospital Authority (the "hospital") may pay physicians on a flat fee or per diem basis to be on call to admit emergency room patients to the hospital without violating section 161.091 of the Health and Safety Code which prohibits health care professionals from accepting remuneration for securing or soliciting patients or patronage. You explain that the hospital has contracted with a local medical firm to provide physicians to staff the emergency room. These physicians are not on the hospital's active medical staff and are therefore unable to admit patients to the hospital. Although some emergency room patients have an ongoing relationship with a member of the active medical staff who can admit them to the hospital, other patients do not. As a result, the hospital must recruit physicians from its active medical staff to be available at the emergency room for the sole purpose of admitting those patients who have no ongoing relationship with a member of the medical staff.

Section 161.091 of the Health and Safety Code provides in pertinent part:

> (a) A person[1] licensed, certified, or registered by a health care regulatory agency of this state commits an offense if the

---

[1]The Code Construction Act defines the term "person" to include a "corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity." Gov't Code § 311.005(2).

person intentionally or knowingly offers to pay or agrees to accept any remuneration directly or indirectly, overtly or covertly, in cash or in kind, to or from any person, firm, association of persons, partnership, or corporation for securing or soliciting patients or patronage.

. . . .

(e) This section shall not be construed to prohibit remuneration for advertising, marketing, or other services that are provided for the purpose of securing or soliciting patients provided the remuneration is set in advance, is consistent with the fair market value of the services, and is not based on the volume or value of any patient referrals or business otherwise generated between the parties.

(f) This section shall not be construed to prohibit any payment, business arrangements, or payments practice not prohibited by 42 U.S.C. Section 1320a-7b(b) or any regulations promulgated pursuant thereto.[2] [Footnotes added.]

Section 1320a-7b(b) of title 42 of the United States Code generally criminalizes kickbacks in Medicare and federally-funded state health care programs. Pursuant to its statutory authority, the Office of the Inspector General of the United States Department of Health (the "OIG") has issued regulations which exempt certain payment practices from those criminal penalties. *See* 42 C.F.R. §§ 1001.951, 1001.952. Those regulations provide that remuneration made by a principal to an agent as compensation for services of the agent is not subject to criminal liability, as

---

[2]Subsection (c) of section 161.091 provides that "[e]xcept as provided by this section, an offense under this section is a Class A misdemeanor. If it is shown in the trial of a violation of this section that the person has previously been convicted of a violation of this section, on conviction the person shall be punished for a felony of the third degree. In addition to any other penalties or remedies provided, a violation of this section shall be grounds for disciplinary action by the regulatory agency." Subsection (d) authorizes the appropriate health care regulatory agency to institute an action to enjoin a violation or potential violation of section 161.091.

Subsection (g) provides that section 161.091 does not apply to "licensed insurers, governmental entities, including governmental risk pools ..., group hospital service corporations, or health maintenance organizations which reimburse, provide, offer to provide, or administer hospital, medical, dental, other health-related benefits under a health benefits plan for which it is the payor." You do not ask whether this subsection operates to exempt the hospital, and we assume that it does not.

long as the following six standards are met: (1) The agreement must be written and signed by the parties; (2) the agreement must specify the services to be provided by the agent; (3) the agreement must specify the exact schedule of the time intervals for which services are to be provided and the charges therefor; (4) the term of the agreement must be for not less than one year; (5) the aggregate compensation paid to the agent over the term of the agreement must be set in advance, be consistent with fair market value in arms-length transactions, and not be determined in a manner which takes into account the volume or value of any referrals or business otherwise generated between the parties for which payment may be made in whole or in part under Medicare or a federally-funded state health care program; and (6) the services performed under the agreement must not involve the counseling or promotion of a business arrangement or other activity that violates any state or federal law. *Id.* § 1001.952(d).

You state that the hospital's personal service contracts with the physicians will be set out in writing and signed by the parties; will specify the services to be provided by the physician; will specify the schedule for delivery of such services; and will cover a period of not less than one year. You also state that the physicians will be paid on a flat fee or per diem basis that will reflect the fair market value for the services to be performed. Presumably, therefore, the contract will not take into account the volume or value of the patients admitted to the hospital.

It is beyond the purview of the opinion process to review particular contracts and to determine whether they satisfy specific statutory requirements. Assuming, however, that the contracts are as you describe them, and that they do not "involve the counseling or promotion of a business arrangement or other activity that violates any state or federal law," 42 C.F.R. § 1001.952(d)(6), then persons making payments under such contracts are exempted from criminal liability under section 1320a-7b(b) of title 42 of the United States Code by the regulations promulgated by the OIG. Therefore, the payments made pursuant to such contracts are also exempted from section 161.091 of the Health and Safety Code by virtue of subsection (f) which provides that section 161.091 "shall not be construed to prohibit any payment . . . not prohibited by 42 U.S.C. Section 1320a-7b(b) or any regulations promulgated pursuant thereto." We also conclude that such payments would be exempted from section 161.091 by virtue of subsection (e) which provides that "[t]his section shall not be construed to prohibit remuneration for . . . services that are provided for the purpose of securing or soliciting patients provided the remuneration is set in advance, is consistent with the fair market value of the services, and is not based on

the volume or value of any patient referrals or business otherwise generated between the parties."[3]

## S U M M A R Y

Assuming that the Edinburg Hospital Authority's contracts with physicians for the purposes of admitting emergency room patients to the hospital conform with the criteria set forth in section 1001.952(d) of title 42 of the Code of Federal Regulations, payments made under such contracts would not be prohibited by section 161.091 of the Health and Safety Code.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General

---

[3]You contend, notwithstanding section 161.091 of the Health and Safety Code, that the hospital is authorized to enter into such contracts by section 3.06(f) of the Medical Practice Act, V.T.C.S. article 4495b, which provides in part that "[n]othing in this Act shall be construed to prohibit a county or municipal corporation or a hospital district or authority from contracting with a physician to provide services at a hospital owned and operated by the county or municipal corporation or the hospital district or authority . . . ." We disagree. Section 3.06(f) by its terms applies only to prohibitions contained in the Medical Practice Act itself. *See* V.T.C.S. art. 4495b, § 3.06(f) ("*Nothing in this Act shall be construed . . .*") (emphasis added).